UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOROTA BIENIEK, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE AND PENSION FUNDS,<br><br>Defendant. | No. 22 CV 6498<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dorota Bieniek alleges that her employer failed to provide her a reasonable accommodation for her migraines, in violation of the Americans with Disabilities Act. She wants to represent a class of other similarly situated employees. Her employer, defendant Central States Southeast and Southwest Areas Health and Welfare and Pension Funds, moves to dismiss her individual and class allegations. The motion is granted in part and denied in part.

**I.      Legal Standard**

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *Gociman v. Loyola Uni. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022).

"Legal assertions or recital of the elements of a cause of action supported by mere conclusory statements," however, do not receive the presumption of truth. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (citation and quotations omitted).

## II. Facts

Dorota Bieniek worked for Central States, two multiemployer trust funds that provided pension and health benefits to more than half a million people in the United States. [1] ¶ 8.[1] For more than twenty years, Bieniek suffered from migraines. [1] ¶ 25. Before March 2018, though, she was able to adequately control her symptoms with lifestyle and diet modifications and prescription and over-the-counter medications. [1] ¶ 27.

In March 2018, Central States installed a sound-masking system in its building. [1] ¶ 28. The system purportedly reduced noise distractions and protected speech privacy by adding background noise to the environment. [1] ¶ 28. The floor Bieniek worked on was divided into six zones for the system, and Central States could activate or deactivate each zone independently. [1] ¶ 29. Bieniek was in zone 1. *See* [1] ¶¶ 32–33. The day Central States turned the system on, four employees, including Bieniek, began complaining of headaches, nausea, and dizziness. [1] ¶ 30. Central States tried to address the issue by reducing the system's noise level, but employees, including Bieniek, continued to complain of symptoms. [1] ¶ 31. In response, Central States conducted a "test." [1] ¶ 32. It turned off the system in zone 1 to see if

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of the filings.

2

employees would continue complaining of symptoms. [1] ¶ 32. But zone 1 employees still had to walk through other zones during the workday. [1] ¶ 35. And plaintiffs allege on information and belief that Central States took no steps to see if the system's noise generated in other zones entered zone 1 during the "test" period. [1] ¶¶ 33, 35.

Employees in zone 1 continued complaining of symptoms. [1] ¶ 34. Central States then revealed to them that the company had turned off the system in zone 1, and asked the employees to explain how it was possible for them to continue experiencing symptoms. [1] ¶ 34. Central States said it did not know why the employees were experiencing symptoms, but based on the "test" results, it was convinced that the system wasn't the cause. [1] ¶ 36. About a year after installing the system, Central States moved to another building and had the same system installed. [1] ¶ 37.

Four months after that, Bieniek requested an ADA accommodation. [1] ¶ 40. She submitted a Medical Inquiry Form and note prepared by her doctor, as well as a memorandum outlining her request for an accommodation. [1] ¶ 40. The memorandum said that three things were causing Bieniek's migraines to become more severe: the frequency and decibel settings on the system, the sound from the HVAC system, and the overhead LED lighting. [1] ¶ 41.

Human resources employees, including director Scott Robbins, met with Bieniek to discuss the request. [1] ¶ 42. Bieniek reiterated that work environment factors (specifically the sound system) triggered her migraines, her migraines go away when she leaves work, and she rarely experiences migraines outside of work.

3

[1] ¶¶ 43, 46. Human resources told Bieniek she could relocate to another workstation in the same area of the building. [1] ¶ 45. Bieniek said she was open to relocating, even though it would require another coworker to move, and Bieniek moved in January 2020. [1] ¶¶ 46–47. In March, Bieniek told Central States that the accommodation wasn't effective and that her migraines were getting worse. [1] ¶ 48. Central States did nothing in response. [1] ¶ 49.

But later that month, because of the COVID-19 pandemic, Central States told its employees to work remotely. [1] ¶ 51. When Bieniek began working from home, her migraines dissipated. [1] ¶ 52. She performed all of the essential functions of her job and received a positive performance review. [1] ¶ 53. In fact, she was more productive while working remotely because she was no longer suffering from migraines. [1] ¶ 54.

In August 2020, Bieniek asked to continue working remotely after other employees returned to the office. [1] ¶ 56. Central States told her that it would review her request once the company decided to bring employees back into the office. [1] ¶ 57. In September, seeking a more definitive answer, Bieniek emailed the company's executive director asking the same question. [1] ¶ 58. When she sent the email, Central States still hadn't decided whether to bring employees back. [1] ¶ 58. Five days later, the director rejected her request. [1] ¶ 59.

Bieniek filed a charge of discrimination with the EEOC the same day. [1] ¶ 60. She alleged that Central States had discriminated against her and others on the basis of their disability and sex and had failed to provide reasonable accommodations. [1]

¶ 60. After she filed the charge, she made repeated attempts to seek a reasonable accommodation, but Central States did not engage with her in the interactive process. [1] ¶ 61; *see also* Appendix to 29 C.F.R. § 1630 (interpretive guidance for the "interactive process"). About a year after Bieniek filed the EEOC complaint, the EEOC issued a determination that Central States discriminated against a class of employees, including Bieniek, by failing to provide a reasonable accommodation in violation of the ADA. [1] ¶ 62.

In April 2022, Bieniek was told to return to the Central States offices at least two days a week. [1] ¶ 63. Following her return, she began experiencing frequent and severe migraines. [1] ¶ 64. As a result, she was forced to use Family Medical Leave Act time, which meant she wasn't earning her hourly wages. [1] ¶ 65. She made repeated requests for a reasonable accommodation, but Central States did not substantively respond to her requests. [1] ¶¶ 66–67. In August 2022, the EEOC issued her a right-to-sue letter. [1] ¶ 68.

### III. Analysis

Central States moves to dismiss on two grounds: that Bieniek is not disabled under the ADA and that her proposed class doesn't meet Rule 23's certification requirements. [14].

#### A. Bieniek's Individual Claim

A plaintiff must have a disability to invoke the protections of the ADA. The statute defines a disability, in relevant part, as "[a] physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but aren't limited to, "caring for oneself, performing

5

manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The term "disability" must be "construed in favor of broad coverage…to the maximum extent permitted" by the law. 42 U.S.C. § 12102(4)(A).

"An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). The same is true for disabilities whose symptoms have been ameliorated by mitigating measures, like medication, equipment, or learned behavioral or adaptive neurological modifications. 42 U.S.C. § 12102(4)(E)(i).

Defendant argues that Bieniek does not have a qualifying disability. It says that, by her own admission, working is the only major life activity limited by her condition. [14] at 16. For that to count as a disability, defendant says, she must show that her conditions "substantially limit[] employment generally," and don't simply prevent her from "perform[ing] a particular job for a particular employer." [14] at 16 (quoting *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 961 (7th Cir. 1996)).

Working isn't the only major life activity limited by Bieniek's condition. She has ameliorated her symptoms outside of work through lifestyle modifications and medication, [1] ¶ 27, but this does not mean that her disability only limits her work. An impairment whose symptoms have been ameliorated by mitigating measures is still a disability if it would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(E).

6

At any rate, Bieniek does allege that she still experiences symptoms outside of work. [1] ¶ 43. Those symptoms are rare, but "[a]n impairment that is episodic…is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Granted, Bieniek doesn't say that the rare migraine episodes she experiences outside of work substantially limit a major life activity, but that's a reasonable inference to draw at this stage and under this statute. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307–08 (7th Cir. 2021) (on motion to dismiss, court must draw all reasonable inferences in favor of plaintiff); 42 U.S.C. § 12102(4)(A) (definition of disability should be construed in favor of broad coverage). Bieniek therefore has adequately alleged that major life activities beyond work are substantially limited by her migraines.

Defendant is right, though, that if Bieniek's disability substantially limited *only* her ability to work, Bieniek would have to show that "the impairment [would] substantially limit employment generally." *Homeyer*, 91 F.3d at 961. "Major life activity" "cannot be interpreted…to include working at the specific job of one's choice." *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992) (citation and quotations omitted). Instead, a person is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Powers v. USF Holland, Inc.*, 667 F.3d 815, 820 (7th Cir. 2011).

Defendant says plaintiff has not shown that she is limited in her ability to work generally—only that she is limited in her ability to work at Central States. [16] at 9–12. But it would be premature to resolve that issue now. To conclude that plaintiff's major life function of working isn't substantially limited, I would first have to find that there are sufficient, similar positions in sound-system-free environments in Bieniek's geographical area, or similar positions with employers who would allow her to work from home. *Homeyer*, 91 F.3d at 962. To make that finding, I would need to consider "the number and type of jobs from which [Bieniek] is disqualified, the geographical area to which [Bieniek] has reasonable access, and [Bieniek's] job expectations and training." *Id.* at 962–63 (citation and quotations omitted). That is "not the type of finding that is generally appropriately made on a motion to dismiss," where I lack a developed factual record. *Id.* at 962.

Central States says the determination isn't premature. It argues that Bieniek's statement that she worked from home during the COVID-19 pandemic without issue shows that her ability to work generally isn't limited. [14] at 6; [16] at 11. This argument assumes that other employers (in the same geographical area and for which Bieniek would be qualified to work) would allow Bieniek to work from home. I have no evidence to back up that assumption, and cannot draw an inference against the plaintiff at this stage.

Central States also notes that the *Homeyer* case above, which says determinations about whether a plaintiff is limited in working generally shouldn't be made at this stage, was decided under the pre-*Twombly* and -*Iqbal* "no set of facts"

8

motion-to-dismiss standard, as opposed to the current plausibility standard. *See* 91 F.3d at 961; [16] at 9–10. And it's implausible, defendant implies, that there aren't offices without sound-masking systems that plaintiff could work in. *See* [16] at 9–12. I agree that this seems unlikely. But unlikely is not the same as implausible, and it would be improper to dismiss plaintiff's claim at this stage with no information about the availability of other workplaces. *See Twombly*, 550 U.S. at 556 ("[a] well-pleaded complaint may proceed even if it strikes a [] judge that actual proof of those facts is improbable").

*Carothers v. County of Cook*, on which defendant relies, is not to the contrary. 808 F.3d 1140 (7th Cir. 2015). In *Carothers*, plaintiff worked as a hearing officer in a juvenile detention center adjudicating juvenile detainee grievances. *Id.* at 1144. After injuring herself in a physical altercation with a juvenile detainee, her doctor restricted her from interacting with juvenile detainees. *Id.* She asked the center to accommodate her disability—defined as an anxiety disorder that was "exacerbated by exposure to and interactions with teenagers"—and when she wasn't given one, and instead fired for not showing up to work, she sued on the basis of disability discrimination. *Id.* at 1147. The court said Carothers hadn't shown that she had a disability because she hadn't presented any evidence that her anxiety disorder prevented her from other work. *Id.* at 1148. But *Carothers* was decided on a motion for summary judgment when the factual record was fully developed. The court didn't rule against her because it *assumed* she couldn't find jobs elsewhere. It ruled against her because, after the evidentiary burden had shifted to her, she wasn't able to

9

support her claims. *Id.* at 1147–48. What's more, the evidence showed other jobs were not only available, but that she had been working in one of them. *Id.* at 1148.

The factual record is not nearly as developed here as it was in *Carothers*. The same is true of *Fuller v. McDonough*, 2022 WL 2291224 (N.D. Ill. June 24, 2022), on which defendant relies.[2] Without more information, I will not assume that there are other workplaces without sound-masking systems where Bieniek can work—or that there are other workplaces that, despite having sound-masking systems, would allow Bieniek to work from home. Plaintiff's individual claim can proceed.

B.   **Class Allegations**

Bieniek's complaint defined the class as employees who were denied a reasonable accommodation for their disability or disabilities, [1] ¶ 10, and her response brief narrowed the proposed class to, [15] at 2:

> Defendant's current and former employees who were denied a reasonable accommodation following Defendant's implementation of the SMS that experienced the symptoms that Bieniek experienced as a result of Defendant's use of the SMS.

Defendant moves to dismiss the class allegations under Federal Rule of Civil Procedure 12(b)(6).[3] [14], [16]. That rule governs dismissals based on failure to state a claim. Defendant's 12(b)(6) motion is more appropriately considered under Rule 23,

---

[2] Plaintiff's claimed disability in that case came from working with specific coworkers. 2022 WL 2291224, at **2–4. Other workplaces, by definition, would not have included those coworkers.

[3] Defendant also objects to plaintiff's attempt to narrow the class definition, [16] at 2, but the definition can change over the life of a case and, while sometimes useful for case management and notice to the defendant, plaintiffs are not required to amend their complaints to change their proposed class definition.

10

which governs class actions. *See Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 560 (7th Cir. 2021); *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (substance of motion, not its label, is what counts); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (analyzing, under Rule 23, district court's denial of class certification before a request for certification). Federal Rule of Civil Procedure 23(c)(1)(A) governs the timing of class-certification decisions. It says that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Usually, a court will decide whether to certify a class after the plaintiff has moved for class certification. *Blihovde v. St. Croix County*, 219 F.R.D. 607, 612 (W.D. Wis. 2003). But the rule's language doesn't require this. A court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo*, 656 F.3d at 563.

That is the case here. Plaintiff's class would comprise "employees who were denied a reasonable accommodation," [15] at 2—in other words, people who state a failure-to-accommodate claim under the ADA. So, too, with her original class definition: employees denied a reasonable accommodation for their disabilities. [1] ¶ 10. Either is a fail-safe class, "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Uni. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). That sort of definition is improper as a matter of law because "a class member either wins or, by virtue of

11

losing, is defined out of the class and is therefore not bound by the judgment." *Id*. Regardless of what further factual discovery would show, a fail-safe class is not certifiable. *See Edmond v. City of Chicago*, 2018 WL 5994929, at *14 (N.D. Ill. Nov. 15, 2018) ("[W]hen the defendant advances a *legal* argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained.") (emphasis added) (citation and quotations omitted). Plaintiff cannot pursue a class action as alleged.

## IV. Conclusion

The motion to dismiss, [13], is granted in part and denied in part. Plaintiff's complaint will proceed as an individual claim. Defendant must answer the complaint by 7/24/2023 and the parties shall file a status report with a proposed discovery schedule by 7/31/2023.

ENTER:

                                                          Manish S. Shah
                                                          United States District Judge

Date: July 11, 2023